UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

BRADLEY MILLER, KAYLA KILPATRICK,
and BLAKE BUMANN,
    *on behalf of themselves and all others
    similarly situated*

    Plaintiffs,

v.

ST. CLAIR COUNTY,

    Defendant.

Case No. 23-cv-2597-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion of defendant St. Clair County, Illinois, to dismiss the Second Amended Complaint of plaintiffs Bradley Miller, Kayla Kilpatrick, and Blake Bumann pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6) or, in the alternative, for a more definite statement pursuant to Rule 12(e) (Doc. 34). The plaintiffs have responded to the motion (Doc. 38), and the County has replied to that response (Doc. 39).

The Court will grant the motion as to one claim that is subject to the mandatory grievance procedure in the governing collective bargaining agreement ("CBA"). It will deny the remaining parts of the motion because the County has failed to show the plaintiffs are unable to prevail as a matter of law and because the plaintiffs plead sufficient facts in the Second Amended Complaint to plausibly suggest they have a right to relief from the County.

**I.    Background**

The plaintiffs are employed as Telecommunicators—dispatchers, in common lingo, who manage 911 calls and responses to them—for the St. Clair County Emergency Management Administration ("EMA"), a subdivision of the County. In their Second Amended Complaint

(Doc. 31), the plaintiffs assert that two specific policies of the EMA violate § 207(a)(1) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (Count I), and § 4a(1) of the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq.* (Count II).

The first policy, which the Court will refer to as the "Break Policy," is the automatic deduction of a half-hour as break time from workers' hours. Telecommunicators are often so busy they do not take a meal break or step away from their stations. Telecommunicators can request a correction when they are unable to take the automatically deducted break. However, the plaintiffs allege that on numerous occasions, EMA did not correct the automatic deduction.

The second policy, which the Court will refer to as the "Work Week Policy," is paying overtime premiums only for hours worked over eighty hours in a two-week period even where employees worked over forty hours in a one-week period. The plaintiffs allege that Telecommunicators work twelve-hour shifts three to five times per week, which often results in a week of fewer than forty hours back-to-back with a week of more than forty hours. The plaintiffs are not paid for the hours over forty hours in one of those weeks.

Miller and Bumann have suffered from both policies, and Kilpatrick has suffered from the Work Week Policy. They plan to seek certification as representatives in a collective action under § 16(b) of the FLSA, 29 U.S.C. § 216(b).

The County argues that § 7(a)(1) of the FLSA and § 4a(1) of the IMWL do not apply to the employment relationships in question because they are governed by a CBA, that the plaintiffs have failed to plead sufficient facts to support their claims, and that they have not exhausted their contractual remedies under the governing CBA.

## II.     Applicable Standards

As a preliminary matter, the defendant's motion to dismiss pursuant to Rule 12(b)(6) refers to matters outside the pleadings.  Ordinarily, when such material is presented in connection with a Rule 12(b)(6) motion to dismiss, the Court may treat the motion to dismiss as a motion for summary judgment or it may exclude the additional material from consideration. *See* Fed. R. Civ. P. 12(d).  However, there is an exception to this general rule where the attached material is referenced or relied on in the complaint, where it is central to the plaintiff's claim, and where the authenticity of the material is not in question.  *Minch v. City of Chi.,* 486 F.3d 294, 300 n. 3 (7th Cir. 2007) (citing *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002)) (allowing consideration of collective bargaining agreement governing the parties' relationship). Additionally, the Court may take judicial notice of public records.  *See Orgone Cap. III v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).  The materials attached here concern the plaintiffs' representation by a union, which has entered into a CBA with the County.  Those materials are public records, are central to the plaintiffs' claims, and their authenticity has not been contested.

When considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all allegations in the complaint.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level.  *Bell Atl.*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 556

3

U.S. 662, 678 (2009); *see Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022); *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Bell Atl.*, 550 U.S. at 556).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal,*  556 U.S. at 679.

In *Bell Atlantic*, the Supreme Court rejected the more expansive interpretation of Rule 8(a)(2) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  *Bell Atl.*, 550 U.S. at 561-63; *Concentra Health Servs.*, 496 F.3d at 777.  Now "it is not enough for a complaint to avoid foreclosing possible bases for relief; it must actually suggest that the plaintiff has a right to relief . . . by providing allegations that 'raise a right to relief above the speculative level.'"  *Concentra Health Servs.*, 496 F.3d at 777 (quoting *Bell Atl.*, 550 U.S. at 555).

Nevertheless, *Bell Atlantic* did not do away with the liberal federal notice pleading standard.  *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).  A complaint still need not contain detailed factual allegations.  *Bell Atl.*, 550 U.S. at 555.  Nevertheless, it must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl.*, 550 U.S. at 555.  If the factual detail of a complaint is "so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8," it is subject to dismissal.  *Airborne Beepers*, 499 F.3d at 667; *see, e.g., Kaminski*, 8 F.4th at 776-77.

Where a defendant thinks a complaint is too vague or ambiguous for it to respond intelligently or for the Court to handle the litigation effectively, it may move for a more definite statement under Federal Rule of Civil Procedure 12(e); *see Shuhaiber v. Ill. Dep't of Corr.*, 980 F.3d 1167, 1170 (7th Cir. 2020). Under that rule, it is within the Court's discretion whether to order a party to provide a more definite statement, although such motions are not favored in view of the liberal federal pleading standards discussed above. *Lucas v. Blankenship Constr. Co.*, No. 22-cv-56-JPG, 2023 WL 7300216, * 1 (S.D. Ill. Nov. 6, 2023). More definite statements are most often reserved for complaints that are unintelligible, not those that simply lack detail. *See, e.g., American Nurses' Ass'n v. State of Ill.*, 783 F.2d 716, 726 (7th Cir. 1986); *Stepp v. Covance Cent. Lab. Servs., Inc.*, 931 F.3d 632, 634 (7th Cir. 2019) (noting that if a complaint were indecipherable, defendant could have sought a more definite statement); *Moore v. Fidelity Fin. Servs.*, 869 F. Supp. 557, 559-60 (N.D. Ill. 1994); *FDIC v. Wise*, 758 F. Supp. 1414, 1418 (D. Colo. 1991). Discovery is a more appropriate vehicle for fleshing out the details of a case. *See Moore*, 869 F. Supp. at 560. Furthermore, courts are not receptive to such motions if the details sought could easily be obtained by the defendant. *See* 2 James W. Moore *et al.*, *Moore's Federal Practice* ¶ 12.36[3] (3d ed. 2005).

**III.    Analysis**

The Court starts with the specific assertions of the plaintiffs and the arguments asserted by the defendant.

    A.    <u>Parties' Assertions</u>

To recap, the plaintiffs object to the "Break Policy," the automatic deduction of break time from workers' hours even when they take no break, and the "Work Week Policy," paying overtime premiums only for hours worked over eighty hours in a two-week period even where

employees work over forty hours in one of those weeks. They assert that these policies violate § 7(a) of the FLSA and § 4a(1) of the IMWL.

The County asks for dismissal of claims based on the Work Week Policy because the EMA's employment of Telecommunicators is not governed by § 7(a) of the FLSA but by § 7(b)(1) and (2) because their employment is governed by a CBA. Those provisions allow a CBA to place alternative limits on hours worked before triggering the overtime premium. The County asserts that the employment of the plaintiffs—and the putative collective action members—at all relevant times was governed by a CBA between the Illinois Fraternal Order of Police ("FOP") Labor Council and the County for the years 2019-2021 or 2022-2024.[1] The CBA defines a normal work period for those, like the plaintiffs, who work twelve-hour shifts as eighty hours of work during a fourteen-day work week. The County argues that the Work Week Policy does not violate the alternative limits that trigger overtime under § 7(b)(1) or (2) of the FLSA. Thus, the County asserts, with respect to the Work Week Policy, that the plaintiffs have pled facts that do not amount to a violation of the FLSA.

Similarly, the County asserts that § 4a(1) of the IMWL does not apply in light of the CBA. Rather, the employment relationships in question are excluded from § 4a(1) by § 4a(2)(J), which defers to the standards in § 7(b) of the FLSA for any employee in a collective bargaining unit. Further, with respect to the IMWL claims, the County asserts that the plaintiffs failed to exhaust the grievance procedure under the CBA as required by Illinois law.

In general with respect to all claims, the County argues that the plaintiffs fail to state a claim plausibly suggesting they have a right to relief because they give no specifics such as

---

[1] Both CBAs contain the same provisions defining work periods. For convenience, the Court will refer to "the CBA," in the singular to refer to both.

6

details about when employees worked more than forty hours in a week, when employees worked through breaks and then asked for correction of their time, and the specifics of the denial of these requests.

      B.     <u>FLSA and IMWL for Employment Governed by a CBA</u>

The parties agree that the plaintiffs and the putative collective action members are represented by the Illinois FOP Labor Council which has entered into a bona fide CBA with the County covering all relevant times. They disagree, however, whether the County is exempt from § 7(a)—which requires payment of the overtime premium for hours worked over forty hours in one week—by § 7(b) of the FLSA, which states:

> No employer shall be deemed to have violated subsection (a) by employing any employee for a workweek in excess of that specified in such subsection [40 hours] without paying the compensation for overtime employment prescribed therein if such employee is so employed—
>
> **(1)** in pursuance of an agreement, made as a result of collective bargaining by representatives of employees certified as bona fide by the National Labor Relations Board, which provides that no employee shall be employed more than one thousand and forty hours during any period of twenty-six consecutive weeks; or
>
> **(2)** in pursuance of an agreement, made as a result of collective bargaining by representatives of employees certified as bona fide by the National Labor Relations Board, which provides that during a specified period of fifty-two consecutive weeks the employee shall be employed not more than two thousand two hundred and forty hours and shall be guaranteed not less than one thousand eight hundred and forty-hours (or not less than forty-six weeks at the normal number of hours worked per week, but not less than thirty hours per week) and not more than two thousand and eighty hours of employment for which he shall receive compensation for all hours guaranteed or worked at rates not less than those applicable under the agreement to the work performed and for all hours in excess of the guaranty which are also in excess of the maximum workweek applicable to such employee under subsection (a) or two thousand and eighty in such period at rates not less than one and one-half times the regular rate at which he is employed; . . .
>
> \* \* \*

29 U.S.C. § 207(b) (brackets added).

The plaintiffs contend that their CBA does not satisfy the requirements of either § 7(b)(1) or (2), so § 7(a) still applies to the County for their work. The County argues that, although the CBA does not use the exact language in § 7(b)(1), the CBA's eighty hours in a fourteen-day period provision satisfies § 7(b)(1) because expansion of that week by 13 (i.e., 80 hours/2 weeks x 13) equals 1,040 hours over a 26-week period—or 2,080 over a 56-week period—the provision mentioned in § 7(b)(1). Notably, the County provides no authority for multiplying its eighty-hour "work week" by 13 to get to the numbers stated in § 7(b)(1). Furthermore, the County does not explain how or where the relevant CBA provides "that no employee shall be employed *more than* one thousand and forty hours during any period of twenty-six consecutive weeks" (emphasis added).

Despite the County's effort to equate its eighty-hour work week with the alternative hour restrictions allowed by § 7(b)(1), their plain language is clearly different. And in the absence of any relevant caselaw, statute, or regulation indicating that the CBA's eighty-hour work week is exempt from § 7(a) under the plain language of § 7(b), the County has not carried its burden to show that the plaintiffs have failed to state a claim for this reason.

Similarly, § 4a(2)(J) of the IMWL adopts § 7(b) of the FLSA as the test to determine whether employment under a CBA is exempt from § 4a(1) of the IMWL, the law requiring overtime pay for time worked over forty hours a week. It follows that if the County has not convinced the Court that the CBA governing the plaintiffs' employment qualified under § 7(b) of the FLSA, it has not convinced the Court it qualifies under § 4a(2)(J) either.

For these reasons, the Court declines to dismiss the plaintiffs' overtime wage payment claims based on the FLSA and the IMWL on the grounds that the standard overtime provisions

do not apply.

### C.      Exhaustion of Contractual Remedies

The County asserts that the plaintiffs failed to exhaust their contractual remedies under the CBA for its IMWL claims before filing this lawsuit.  The plaintiffs counter that exhaustion of contractual remedies is only required for disputes arising from the CBA and that their wage payment claims are independent of the CBA.

It is true that where a CBA governs an employment relationship and "establishes a grievance and arbitration procedure for disputes arising out of the agreement, an employee alleging a violation of the agreement must attempt to exhaust his or her contractual remedies before seeking judicial relief." *Kostecki v. Dominick's Finer Foods, Inc. of Ill.*, 836 N.E.2d 837, 843 (Ill. App. Ct. 2005).  However, not every dispute between employees and their employer is subject to arbitration under the CBA.  *Id.*  "[W]hether an employee subject to the provisions of a collective bargaining agreement may enforce his or her statutory rights in court depends on the character of the claim."  *Id.*  If the dispute is governed by the CBA, the exclusive remedy is the grievance procedure.  *Id.*  Otherwise, the dispute may be taken to court.  *Id.*

The Court starts with the CBA to see what the parties have agreed to submit to the grievance procedure.  The CBA defines a grievance as:

> a dispute or difference of opinion between . . . [a] group of employees . . . covered by this Agreement . . . and the Employer with respect to the *meaning, interpretation or applicatio*n of an express provision or provisions of this Agreement as written which involves, as to the grievant, an alleged *violation* of an express provision of this Agreement.

CBA § 3.01 (emphasis added) (Doc. 34-3).

#### 1.      Break Policy

The parties' dispute regarding the Break Policy is a "grievance" subject to the grievance

9

procedure. The crux of that claim is that employees worked time for which they were not given credit. Article 4 of the CBA is devoted to the rules about what constitutes work in various situations. The plaintiffs' dispute under the IMWL about the Break Policy will require the interpretation and application of Article 4 of the CBA to determine whether an individual employee has been given proper credit for time worked such that that they are entitled to compensation, possibly overtime compensation. This dispute asserts a violation of the CBA by the failure to account for hours worked. Consequently, the plaintiffs must resort to the grievance procedure before filing a lawsuit under the IMWL. Since they have not done that, this part of Count II will be dismissed without prejudice.

Indeed, claims for unpaid compensation for time worked under Illinois law are generally subject to the grievance procedures in the CBA governing the plaintiff's employment, if there is one. *See Kostecki*, 836 N.E.2d at 843. This is because the unpaid wages usually result from an alleged violation of the CBA's provision to pay wages for work, and if the claim is governed by the CBA, the exclusive remedy is the grievance procedure in the CBA. *See id.*; *Gelb v. Air Con Refrigeration & Heating, Inc.*, 826 N.E.2d 391, 400 (Ill. App. Ct. 2005); *Uehlein v. Shwachman*, 509 N.E.2d 493, 495 (Ill. App. Ct. 1987).

For example, in *Kostecki*, a claim for unpaid overtime wages, the CBA set up a complicated scheme for determining what overtime wages were to be paid depending on what day the employee worked the overtime. *Id*, at 844-45. There, an unpaid overtime wage claim clearly arose from and required resort to the CBA for resolution, so the claim was subject to the grievance procedure. *Id.* at 845.

Similarly, in *Gelb*, the Illinois Court of Appeals observed that where a plaintiff brings a claim for wages, "a finder of fact would have no choice but to refer to the collective bargaining

agreement in order to determine the amount of wages that were due and owing. . . ." *Gelb*, 826 N.E.2d at 399. By the same token, where a defendant asserts compliance with the CBA as a defense, "the resolution of plaintiffs' Wage Law claim is inextricably bound up with the terms of the collective bargaining agreement, and a court would inevitably have to interpret them." *Id*. And "[w]here an employees' claim arises entirely out of a collective bargaining agreement, the employee lacks standing to pursue judicial relief without first exhausting any remedies provided for in the agreement." *Id.* at 401.

For these reasons, the Court dismisses the plaintiffs' claims based on the Break Policy without prejudice. It does so, however, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, not 12(b)(1) for lack of subject matter jurisdiction. This Court has supplemental subject matter jurisdiction over this claim because it is part of the same case or controversy as the plaintiffs' FLSA claim. *See* 28 U.S.C. § 1367. Further, the plaintiffs do not lack standing; they allege they have suffered a direct, real injury from the Break Policy. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983).

2. Work Week Policy

The Work Week Policy is a different story. The plaintiffs do not claim that the EMA has breached any provision of the CBA by this policy. Instead, it claims that it violated the *law* in a way that perfectly conformed to the CBA's express provisions. This claim does not require construction of the CBA to determine whether the law was violated, there is no dispute or difference of opinion with respect to the *meaning, interpretation* or *application* of this express provision of the CBA, and the plaintiffs allege no *violation* of any CBA provision. Accordingly, the claim that the Work Week Policy violates the IMWL does not fall within the scope of disputes the parties have agreed under § 3.01 of the CBA to submit to the grievance process.

11

Additionally, resolution of this claim will not require interpretation of the CBA but will turn exclusively on an independent question of state law. For these reasons, the plaintiffs were not required to exhaust their contractual remedies for the part of Count II complaining of the Work Week Policy.

        D.    <u>Sufficiency of the Pleading/More Definite Statement</u>

Having carefully reviewed the plaintiffs' Second Amended Complaint, the Court concludes that the plaintiffs' pleading is far from undecipherable or unintelligible and instead that they have pled sufficient facts to satisfy the federal notice pleading standard embodied in Rule 8(a). A more definite statement is not needed to enable the defendant to respond to the allegations in the Second Amended Complaint.

All of the plaintiffs allege their hourly pay rate, the approximate time they began working for the EMA, the type of work they did, and the automatic deduction of a half-hour for lunch break not taken. In addition, plaintiff Bradley Miller alleges that he works a rotating shift schedule where he works 48 hours in one week and 36 hours in the next but is not paid overtime for the extra 8 hours in the 48-hour week. He also alleges that he frequently misses breaks because he is too busy to take them, yet they are deducted from his time. Plaintiff Blake Bumann alleges he typically works the same rotating shift schedule as Miller. He also states he typically works additional hours. And "on numerous occasions" he was not credited for a break he did not take, and his supervisor "frequently" failed to credit him for the missed break. Plaintiff Kayla Kilpatrick alleges she "regularly" works shifts that exceed 40 hours in one week.

To the extent the County claims the plaintiffs insufficiently describe their hours worked, it can consult its own employment records to find out the details. Miller's and Bumann's assertions of "frequently" or "on numerous occasions" missing breaks is, of course, uncertain,

12

but the details can be fleshed out in discovery.

The plaintiffs have satisfied the federal notice pleading requirements. There are enough facts in the Second Amended Complaint to paint a picture of regular overtime payment violations. It is clear to the Court what the plaintiffs are claiming the EMA did wrong and how it accomplished that wrong. This is certainly enough information for the County to investigate the allegations and prepare a response. To the extent the County seeks information about specific days relevant events occurred, it can flesh out those details in discovery. If the plaintiffs are not able to provide sufficient details there, they will not be able to prove their damages.

### IV.     Conclusion

For the foregoing reasons, the Court:

- **GRANTS in part** and **DENIES in part** the County's motion to dismiss the Second Amended Complaint pursuant to Rule 12(b)(6) or, in the alternative, for a more definite statement pursuant to Rule 12(e) (Doc. 34);
    - The motion is **GRANTED** as to the plaintiff's IMWL claim (Count II) to the extent it complains of the Break Policy;
    - The motion is **DENIED** in all other respects;

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case; and

- **ORDERS** that the County shall have 14 days from entry of this order to answer the Second Amended Complaint. *See* Fed. R. Civ. P. 12(a)(4)(A).

**IT IS SO ORDERED.**
**DATED: February 20, 2024**

                                                                        s/ J. Phil Gilbert
                                                                        **J. PHIL GILBERT**
                                                                        **DISTRICT JUDGE**