UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRADLEY MILLER, KAYLA KILPATRICK, and BLAKE BUMANN,<br>*on behalf of themselves and all others similarly situated*<br><br>Plaintiffs,<br><br>v.<br><br>ST. CLAIR COUNTY,<br><br>Defendant. | Case No. 23-cv-2597-JPG |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motion of plaintiffs Bradley Miller, Kayla Kilpatrick, and Blake Bumann to conditionally certify this action as a collective action under § 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b) (Doc. 46). Defendant St. Clair County, Illinois, has responded to the motion (Doc. 51).

**I.  Background**

The plaintiffs are employed as Telecommunicators—dispatchers, in common lingo, who manage 911 calls and responses to them—for the St. Clair County Emergency Management Agency ("EMA"), a subdivision of the County. The plaintiffs assert that two specific policies of the EMA violate § 7(a)(1) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1) (Count I), and § 4a(1) of the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/4a (Count II).

The first policy, the "Break Policy," is the automatic deduction of a half-hour as break time from workers' hours. Telecommunicators are often so busy they do not take a meal break or step away from their stations, yet their time is docked as if they had. Telecommunicators can request a correction when they are unable to take the automatically deducted break. However,

the plaintiffs allege that on numerous occasions, EMA did not correct the automatic deduction. The Court has dismissed the plaintiffs' IMWL claim about the Break Policy without prejudice because it is subject to the grievance procedure in the applicable collective bargaining agreement.

The second policy, the "Work Week Policy," is paying overtime premiums only for hours worked over eighty hours in a two-week period even where employees worked over forty hours in a one-week period.  The plaintiffs allege that Telecommunicators work twelve-hour shifts three to five times per week, which often results in a week of fewer than forty hours back-to-back with a week of more than forty hours.  Telecommunicators are not paid for the hours over forty hours in one of those weeks.

In the pending motion, the plaintiffs ask for conditional collective action certification of Count I of the following group of employees:

> All full-time, hourly paid Telecommunicators who are or were employed by Defendant St. Clair County's Emergency Management Agency from July 26, 2020 to the present, who worked twelve (12) hour shifts, and who were only compensated at one-and-one-half times their regular rate of pay for work performed in excess of 80 hours in a 14 day pay period.

They also ask the Court to compel the County to turn over the names and contact information for hourly-paid Telecommunicators employed during the relevant time period and to allow the plaintiffs to send two notices about this action to all such employees to allow them to opt into the case.  They further ask the Court to toll the FLSA statute of limitations as of the date this case began and to deem the putative collective action members' consents to join the case filed on their dates of mailing.  They propose two notices and a consent form to be sent to potential collective action members and a ninety-day opt-in period.

The County opposes conditional certification because the plaintiffs have not provided evidence of similarly situated individuals and have improperly sought FLSA conditional

collective action for state law claims. They also oppose tolling the state of limitations for those who opt-in and resist providing names of potential collective action members because the plaintiffs have not sought that information in discovery. Finally, they object to the form of the plaintiffs' proposed notice and consent form, the consent period proposed, and the need for a second notice.

## II.     Analysis

As noted above, the plaintiffs allege in Count I a claim for failure to pay overtime compensation in violation of the FLSA, 29 U.S.C. § 207(a)(1), because of the County's Break Policy and Work Week Policy.

### A.     Collective Action

The FLSA provides that an action to recover damages for unpaid overtime compensation "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). In order to be included in an action brought on behalf of a group of similarly situated employees, a claimant must affirmatively opt into the action. *Id.*; *Smith v. Professional Transp., Inc.*, 5 F.4th 700, 702 (7th Cir. 2021). A collective action allows FLSA plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful] activity." *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (age discrimination case implementing FLSA enforcement mechanism); *see also Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1049 (7th Cir. 2020) (noting potential for abuse of collective-action device for settlement leverage).

Although the Seventh Circuit Court of Appeals has not required it, district courts within the Seventh Circuit have developed a two-step process to implement plaintiffs' right under

§ 216(b) to bring an action on behalf of others similarly situated to them. *See, e.g., Petersen v. Marsh USA, Inc.*, No. 10 C 1506, 2010 WL 5423734, at *2 (N.D. Ill. Dec. 23, 2010) (citing *Russell v. Ill. Bell Tel. Co.*, 575 F. Supp. 2d 930, 933 (N.D. Ill. 2008)). The Court of Appeals for the Seventh Circuit has noted this practice but has not required it. *Bigger*, 947 F.3d at 1049 n.5; *In re New Albertsons, Inc.*, No. 21-2577, 2021 WL 4028428, at *2 (7th Cir. Sept. 1, 2021). Indeed, the Court of Appeals has instead noted a district court's wide discretion in managing putative collective actions. *Alvarez v. City of Chi.*, 605 F.3d 445, 449 (7th Cir. 2010); *In re New Albertsons,* 2021 WL 4028428, at *2.

At the first step, sometimes called the notice stage, the plaintiffs are required to show that there are "similarly situated employees who are potential claimants." *Smallwood v. Ill. Bell Tel. Co.*, 710 F. Supp. 2d 746, 750 (N.D. Ill. 2010). The purpose of this stage is not intended to definitively resolve whether a collective action is appropriate but merely to determine whether it is appropriate to notify others, who appear to be similarly situated, of the action and the opportunity to join it. *Ivery v. RMH Franchise Corp.*, 280 F. Supp. 3d 1121, 1132-33 (N.D. Ill. 2017) (citing *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013) ("The sole consequence of conditional certification is the sending of court-approved written notice to employees . . . who in turn become parties to a collective action only by filing written consent with the court.")).

The plaintiffs can satisfy the first step by making a "modest factual showing" that they and other potential plaintiffs were victims of a common unlawful policy or plan. *Smallwood*, 710 F. Supp. 2d at 750 (quoting *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003)). "[A] plaintiff need only demonstrate a factual nexus that binds potential members of a collective action together." *Gambo v. Lucent Techs., Inc.*, No. 05 C 3701, 2005 WL 3542485, *4 (N.D. Ill. Dec. 22, 2005). At this stage, the Court does not resolve factual disputes, decide

4

substantive issues going to the merits or make credibility determinations. *Marshall v. Amsted Indus., Inc.*, No. 10-cv-11-MJR- CJP, 2010 WL 2404340, * 5 (S.D. Ill. June 16, 2010). If the plaintiff succeeds at the notice stage, the Court will conditionally certify the collective action and will authorize notice of the action to potential plaintiffs who may want to join. *Smallwood*, 710 F. Supp. 2d at 750. The standard at the notice stage is lenient, *Russell*, 575 F. Supp. 2d at 933, and courts have broad discretion to implement the notice provisions of § 216(b), *Hoffmann-La Roche*, 493 U.S. at 169.

The second step occurs after the opt-in period and further discovery. There, at a defendant's request, the Court asks "whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis." *Smallwood*, 710 F. Supp. 2d at 750 (internal quotations omitted). If there is not sufficient similarity, the Court may reconsider its decision to allow the case to proceed as a collective action and dismiss the opt-in plaintiffs' claims without prejudice. *Russell*, 575 F. Supp. 2d at 933; *Marshall*, 2010 WL 2404340 at * 5.

As noted above, to support their application for conditional collective action certification at the notice stage of the two-step process, the plaintiffs in this case may point to a common corporate policy or plan that is unlawful and that applies to all EMA Telecommunicators who were paid on an hourly basis and who worked twelve-hour shifts. They point to the Work Week Policy and the Break Policy, and the County does not contest those policies are common corporate policies.

The Court is satisfied that the plaintiffs have made the required "modest factual showing" that they and other potential plaintiffs were victims of a common policy or plan—the Work Week Policy. The record reflects undisputedly that the policy exists and that, as a rule, workers who worked twelve-hour shifts were subject to that policy. As a consequence, they were not paid

overtime for every other week that they worked more than forty hours in the week. The plaintiffs have plausibly suggested, and the County has not refuted, that the Work Week Policy violates § 7(a) of the FLSA, 29 U.S.C. § 207(a), and that all Telecommuters working twelve-hour shifts suffered from it. Conditional collective certification is appropriate for the FLSA Work Week Policy claim in Count I.

There is not a sufficient factual showing that the Break Policy affected the rights of a significant number of other putative collective action. In fact, only two of the three existing plaintiffs allege that they were harmed by the Break Policy. It is possible that, although the policy was broadly applicable, not all—or even a substantial percentage—of the Telecommunicators were harmed by it. The plaintiffs have simply not made even a modest factual showing that the policy victimized any other member of the proposed collective. Furthermore, the Court dismissed a virtually identical claim under the IMWL because it could and should be resolved using the dispute resolution measures set forth in the Telecommunicators' collective bargaining agreement with the County. This claim is not appropriate for conditional certification under the FLSA.

The County is also correct that the plaintiffs reach too broadly when they ask the Court to include in the conditional collective action certification the remaining IMWL claim in Count II with respect to the Work Week Policy. Only FLSA claims can be brought as collective actions under § 16(b) of the FLSA; state law claims must be pursued collectively, if at all, as a class action certified under Federal Rule of Civil Procedure 23. *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 974 (7th Cir. 2011). Both can be pursued in a combined action, *id.* at 973-74, but the plaintiffs have not sought class certification under Rule 23 of their remaining IMWL claim.

For these reasons, the Court will conditionally certify a collective action for Count I regarding application of the Work Week Policy and will deny certification as to all other claims.

B.      Equitable Tolling

The plaintiffs ask the Court to equitably toll the statute of limitations for putative class members from the commencement of this action on July 26, 2023, to the date their consent to be part of this litigation is filed.

The statute of limitations for a non-willful FLSA violation is two years and for a willful violation, three. *See* 29 U.S.C. § 255(a). The cause of action of a putative collective action member not named in the complaint is considered commenced when their written notice of consent is filed in the Court. 29 U.S.C. § 256(b). Equitably tolling the statute of limitations from the commencement of this suit until a consent is filed would mean a putative class member could look back to the defendant's conduct over the two or three years prior to the *filing of the Complaint* rather than two or three years prior to the *filing of their consent to join* the collective action.

Equitable tolling is extended sparingly and only where claimants exercise diligence in preserving their legal rights. *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96 (1990) (citing *Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 151 (1984)). A litigant seeking equitable tolling bears the burden of establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Menominee Indian Tribe of Wisc. v. United States*, 577 U.S. 250, 255, 256 (2016) (internal quotations omitted).

The plaintiffs have not met their burden of showing equitable tolling is warranted. It is clear that "[a] cause of action for overtime pay accrues when the employee received less than required by FLSA, regardless of whether the employee has completed a qualitative assessment that a viable claim might be pursued." *McColley v. Casey's Gen. Stores, Inc.*, 627 F. Supp. 3d 972, 981 (N.D. Ind. 2022). The putative plaintiffs surely understood when they were paid that

7

they were not paid an overtime premium for the hours over forty they worked every other week. At that point, their individual causes of action accrued regardless of whether they knew they had a viable suit. Their failure to sue on their own behalf before now does not reflect a diligent pursuit of their rights.

Additionally, the plaintiffs have not shown that extraordinary circumstances prevented any putative class member from filing a lawsuit after their cause of action accrued. The extraordinary circumstance must be an external obstacle to timely filing that was beyond the litigant's control. *Menominee Indian Tribe*, 577 U.S. at 256-57. The plaintiffs point to no extraordinary circumstance that fits this bill.

For these reasons, the Court declines to equitably toll the statutes of limitations for putative collective action members. Additionally, the plaintiffs have provided no legal support for deeming a putative plaintiff's consent filed when they placed it in the mail and for disregarding the FLSA's clear statement that an opt-in plaintiff's claim is begun when their consent is filed, 29 U.S.C. § 256(b). In light of nearly instantaneous electronic filing, such a rule would be superfluous.

In light of the limitation of the claims in the collective action and the limitations periods applicable to collective action members, the Court defines the class as follows, going back three years from the date of this certification to ensure inclusion of all potential plaintiffs who might be able to join a claim for willful violation of the FLSA:

> **All full-time, hourly paid Telecommunicators who are or were employed by defendant St. Clair County in its Emergency Management Agency from May 13, 2021, to the present, who worked twelve (12)-hour shifts, and who were only compensated at one-and-one-half times their regular rate of pay for work performed in excess of 80 hours in a 14-day pay period.**

C.  <u>List of Eligible Collective Action Members</u>

The plaintiffs has asked the Court to compel the County to provide names and contact

information for Telecommunicators who are eligible to join this collective action under the foregoing collective definition. Rather than jumping in at this point, the Court prefers to let the plaintiffs seek what they want through discovery, and only then compel production if the County's responses are not sufficient. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (discovery of names and contact information of potential collective action members was appropriate). The Court will, however, shorten the County's deadline to respond to such discovery requests within 14 days of the request.

        D.      <u>Oversite of Notice Procedure</u>

"[D]istrict courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . actions by facilitating notice to potential plaintiffs." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989). Potential opt-in plaintiffs should receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id.* at 170. Courts, therefore, are authorized to "manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." *Id.*; *see* Fed. R. Civ. P. 83. Often they assert oversight early in the process before notice is even given. *Hoffmann-La Roche*, 493 U.S. at 171-72. In doing so, however, the Court "must be scrupulous to respect judicial neutrality" and "must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Id.* at 174.

To ensure the notice given to putative collective action members is "timely, accurate, and informative," yet neutral as to the Court's position, the Court proposes the attached modification of the Notice (Attachment 1) and Consent Form (Attachment 2) suggested by the plaintiffs. The Court's revision corrects some inaccuracies and suggests some alternative provisions such as, for example, a 45-day opt-in period. The parties are to review the notice and be prepared to discuss

9

their objections in a telephone status conference to be set by separate order.

### III. Conclusion

For the foregoing reasons, the Court:

- **GRANTS in part** and **DENIES in part** the plaintiffs' motion to conditionally certify a collective action under the FLSA (Doc. 46);

- **CONDITIONALLY CERTIFIES** a collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b), to pursue the FLSA claim in Count I based on the Work Week Policy. The collective shall consist of the following individuals:

  > **All full-time, hourly paid Telecommunicators who are or were employed by defendant St. Clair County in its Emergency Management Agency from May 13, 2021, to the present, who worked twelve (12)-hour shifts, and who were only compensated at one-and-one-half times their regular rate of pay for work performed in excess of 80 hours in a 14-day pay period;**

- **DENIES** the plaintiffs' request for equitable tolling and a filing date of the consent mailing date; and

- **ORDERS** that the parties review the Notice (Attachment 1) and Consent Form (Attachment 2), modified by the Court from the originals proposed by the plaintiffs, and be prepared to discuss and/or make objections at a telephone status conference to be set by separate order.

**IT IS SO ORDERED.**
**DATED:  May 13, 2024**

                                                s/ J. Phil Gilbert
                                                **J. PHIL GILBERT**
                                                **DISTRICT JUDGE**